IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHYSICIANS W8 SOLUTIONS, LLC** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 08-1683 |
| | : | |
| **CODINO'S LIMITED, INC., et al.** | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                            **April   7,   2009**

Plaintiff Physicians W8 Solutions, LLC ("Plaintiff"), brings this action against Defendants Codino's Limited, Inc. ("Defendant" or "Codino's Limited"[1]), and Codino's Foods, Inc. (individually "Codino's Foods"; defendants collectively "Defendants"), alleging breach of contract and promissory estoppel. Now before the Court is the Motion of Codino's Limited to Dismiss for Lack of Personal Jurisdiction (the "Motion").[2] For the reasons that follow the Motion will be denied.

**I. BACKGROUND**

Accepting the allegations in the Complaint as true and construing all factual disputes in Plaintiff's favor, the facts pertinent to the Motion are: Plaintiff develops weight-loss services, including packaged meals, for physicians to provide to their patients. Compl. ¶ 5. Plaintiff's only office is located in Horsham, Pennsylvania. Id. ¶ 1. Codino's Limited is a corporation whose principal place of business and place of incorporation are Ohio. Id. ¶ 2.

In 2007, Plaintiff was preparing a pilot program to test its weight loss services, including the provision of meals, in the Philadelphia area. Decl. of David A. Katz ¶¶ 2, 8, attached to

---

[1] "Codino's Limited" is used where it is useful to differentiate that party from Codino's Foods.

[2] Codino's Foods is not a party to the instant Motion.

1

Resp. at Ex. 1 (hereinafter "Katz Decl."). Plaintiff's representatives located Codino's Foods on the Internet and sent an email inquiring whether it would be interested in supplying pasta for Plaintiff to include in its meals for the pilot program. Id. ¶ 5. Glenn Brown ("Brown"), an employee of both Codino's Limited and Codino's Foods, responded and began negotiating a food supply contract.[3] Id. ¶¶ 6–7. During the negotiations, the parties exchanged between sixty and eighty emails and telephone calls, about half of which were initiated by Brown. Id. ¶ 7; Decl. of Glenn Brown ¶ 5, attached to Rep. (hereinafter "Brown Decl."). Plaintiff's representative, David Katz ("Katz"), was located in Pennsylvania during nearly all of the parties' telecommunications. Katz Decl. ¶ 7. Throughout the negotiations, Brown was aware that the pilot program was to take place in the Philadelphia area. Id. ¶ 10.

At a meeting in Ohio between Katz and Defendant's employees, Brown proposed that instead of supplying only pasta, Defendant would fulfill all of Plaintiff's needs for packaged meals for its pilot program. Katz Decl. ¶ 9. During the negotiations, Defendant sent food samples to Plaintiff in Pennsylvania for tasting and approval. Id. ¶ 11. In early January 2008, Brown was scheduled to visit Plaintiff's office in Horsham to make a presentation on the nutritional details of the packaged meals. Decl. of Jerry Gibboni ¶ 8, attached to Resp. at Ex. 2 (hereinafter "Gibboni Decl."). However, only days before Brown's scheduled visit and the scheduled commencement date of the pilot program, Defendant suddenly stated it would not provide the services it had allegedly promised. Compl. ¶ 10; Gibboni Decl. ¶ 9.

---

[3] Whether these negotiations produced a contract is disputed by the parties. See Compl. ¶ 8; Mot. Br. at 1; Codino's Foods Answer ¶ 8.

2

## II. LEGAL STANDARD

When a defendant brings a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff "bears the burden of establishing the court's jurisdiction." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). To meet that burden, the plaintiff "need only establish a prima facie case of personal jurisdiction and . . . is entitled to have [its] allegations taken as true and all factual disputes drawn in [its] favor." Id. A federal district court sitting in diversity may exercise jurisdiction over a foreign defendant to the extent allowed by the law of the state in which the district court is located. See Fed. R. Civ. P. 4(e). The Pennsylvania long-arm statute allows courts to exercise personal jurisdiction to the fullest extent permitted by the United States Constitution. See 42 Pa. Cons. Stat. § 5322(b); Applied Tech. Int'l, Ltd. v. Goldstein, 2004 U.S. Dist. LEXIS 21219, at *4 (E.D. Pa. Oct. 20, 2004).

Due Process requries: "(1) that the 'defendant have constitutionally sufficient minimum contacts with the forum . . . and (2) that subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice.'" Toys "R" Us, Inc. v. Step Two, 318 F.3d 446, 451 (3d Cir. 2003) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). Minimum contacts exist when there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Id. (quoting Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., 480 U.S. 102, 109 (1987)).

A defendant's contacts with the forum state reach the constitutionally sufficient minimum level in one of two ways. When the contacts are "continuous and systematic," the court may exercise "general jurisdiction" over the defendant even if the contacts are unrelated to the plaintiff's cause of action. See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 151 n.3 (3d Cir. 1996). In contrast, "specific jurisdiction" exists "if the plaintiff's

cause of action is related to or arises out of the defendant's contacts with the forum," Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002), such that the defendant "should reasonably anticipate being haled into court" in that forum. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

## III. ANALYSIS

In a contract case, "[t]he requisite contacts [necessary for a court to exercise personal jurisdiction] may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (citing Burger King, 471 U.S. at 479). The Court "must employ a highly realistic approach" and must consider the actual contemplated consequences of the parties' dealing. Id. at 1224–25 (quoting Burger King, 471 U.S. at 479) (internal quotation marks omitted).

Plaintiff contends that "specific jurisdiction" exists over Codino's Limited based on the parties' negotiations and contemplated performance. Plaintiff first points to the extensive telephone and email communications between Brown and Plaintiff's representatives in Pennsylvania, about half of which were initiated by Brown. "Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993); see also Telespectrum Worldwide, Inc. v. MBNA Canada Bank, 1995 U.S. Dist. LEXIS 5625, at *9 (E.D. Pa. Apr. 16, 1999) (considering pre-contract telecommunications as a factor, but not treating such communications as by themselves dispositive).

In response, Defendant relies heavily on Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147 (3d Cir. 1996), in which the Third Circuit held that communications by telephone and mail in the course of developing a contract for sale of goods

4

failed, without more, to establish minimum contacts sufficient to support personal jurisdiction. See 75 F.3d at 152. The Third Circuit emphasized that the defendant was a "passive buyer" of goods and did not solicit the plaintiff. Id. at 152. The Court contrasted the defendant in that case to a seller or an "active" buyer, either of which the court characterized as more likely to be reaching out to the forum state through its communications. See id. at 152 n.5. Further, the plaintiff seller never shipped any goods to the defendant from or through Pennsylvania, nor did the defendant receive any shipments of goods in Pennsylvania. Id. at 151. Additionally, no payments were sent by the defendant to the plaintiff in Pennsylvania. Id. at 152.

The instant matter is clearly distinguishable from Vetrotex. First, Defendant was to be a seller of goods. Second, Defendant was an active participant in negotiations. Most notably, it was Defendant that first suggested that it would supply all of Plaintiff's food needs, rather than merely supplying pasta. Third, while Brown did not ultimately visit Horsham, his planned presentation shows an intent to avail Defendant of the benefits and protection of the laws of Pennsylvania. Fourth, Defendant shipped several food samples to Pennsylvania.

Finally, based upon a "highly realistic" look at the "contemplated future consequences" of the (actual or contemplated) terms of agreement, it is clear that the parties anticipated extensive entanglement with Pennsylvania. Defendant knew that most of the food it was to prepare would be shipped to Pennsylvania.[4] Further, Defendant knew that it would receive and supply Plaintiff

---

[4] Because Defendant knew that its meal packages would be shipped to Pennsylvania, it is immaterial that shipment was to be made by a common carrier rather than by Defendant. See, e.g., Turrett Steel Corp. v. Manuel Int'l Inc., 612 F. Supp. 387, 389–90 (W.D. Pa. 1985) (finding activities in Pennsylvania sufficient to support jurisdiction in part based on the defendant's knowledge that its steel would be transported to Pennsylvania by an independent trucking firm). See generally Farino, 960 F.2d at 1224–25 (stating that the Court must take a "highly realistic look" at the contemplated consequences of the parties' dealing).

with prepared foods from a number of Pennsylvania firms.[5] See Sur-Rep. 2–3. In sum, given the parties' negotiations and the anticipated consequences of their bargaining, the Court finds that Codino's Limited has purposely availed itself of the benefits and protections of the laws of Pennsylvania, justifying the exercise of personal jurisdiction.

"Once the plaintiff has made out a prima facie case of minimum contacts . . . , 'the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Grand Entm't Group, 988 F.2d at 483 (quoting Carteret Savings Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992)). However, Codino's Limited concedes that the fairness factors set forth in World-Wide Volkswagen, 444 U.S. at 292, do not favor dismissal in this case. See Reply 9. Because the burden is on Defendant to show unfairness affirmatively, and it has failed to do so, the Court finds that exercising jurisdiction would not be unfair.

**IV. CONCLUSION**

For the above reasons, the Motion of Codino's Limited will be denied. An appropriate Order follows.

---

[5] Specifically, Brown had agreed to supply Plaintiff with snack bars from Tastycake, located in Philadelphia, and egg products from Michael Foods, located in Klingerstown, Pennsylvania. Gibboni Decl. ¶¶ 5–6.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHYSICIANS W8 SOLUTIONS, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 08-1683 |
| | : | |
| CODINO'S LIMITED, INC., et al. | : | |

## ORDER

**AND NOW**, this 7th day of April, 2009, upon consideration of the Motion to Dismiss of Defendant Codino's Limited, Inc. (docket no. 9), and all responses thereto, and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **DENIED**.

BY THE COURT:


/s/ Bruce W. Kauffman
BRUCE W. KAUFFMAN, J.